Argued December 2, 1937; affirmed March 15; rehearing denied
May 17, 1938

# RATCLIFFE *v.* UNION OIL CO. OF CALIFORNIA

(77 P. (2d) 136)

In Banc.

*W. C. Winslow*, of Salem (A. E. Schirman, of Salem, on the brief), for appellant.

*John D. Williams*, of Portland, and *John H. Carson*, of Salem (Carson & Carson, of Salem, on the brief), for respondent.

LUSK, J.  The plaintiff (appellant) recovered a judgment, pursuant to the verdict of a jury, for $2,400 against the defendant (respondent) in an action for damages for breach of contract. The circuit court, on motion, set aside the judgment and granted a new trial. From that order this appeal is taken.

The contract out of which the controversy arises was executed by the parties under date of July 2, 1930. It is entitled "Agency and Facilities Agreement". By its terms the defendant, referred to as the Company, appoints plaintiff, styled "Agent", as its agent for the period from July 29, 1930, to July 22, 1935, for the sale of gasoline from certain premises located at the northeast corner of Twelfth and Mission streets, in the city of Salem, Marion county, Oregon. The contract contains, among others, these provisions:

"3.  The Agent's authority hereunder shall be limited to the sale, for cash, of Company gasoline, to the amount held by him on consignment at the above described location.

"4.  The gasoline furnished to the Agent shall be sold by him for the Company at the retail sale price fixed by the Company therefor.

"5.  The Company will allow the Agent a commission of three cents per gallon on all the Company's gasoline sold by the said agent.

"6.  The Agent will use his own or leased tanks, containers, pumps, and other facilities for the sale and

distribution of the Company's gasoline, and the Company to recompense Agent therefor will, in addition to the commission hereinbefore provided, credit the Agent's account in a sum equivalent to one cent per gallon for all the Company's gasoline sold by the Agent through the Agent's facilities on said premises."

Paragraph 7 provides in part, "The Company will furnish to the Agent and maintain on consignment at the Agent's place of business, stocks of gasoline sufficient for Agent's reasonable trade requirements, title thereto to remain in the Company until sold."

By paragraph 8 the Agent agrees to dispense Company's gasoline exclusively through not less than all present and future pumps on said premises and under Company's brands, and to diligently promote the sale thereof, and, further, to maintain on pumps through which the Company's gasoline is dispensed, Company's colors and emblems designated by the Company.

The plaintiff alleged in his complaint that on or about November 22, 1930, and thereafter, the defendant breached the contract, by refusing to supply him with a quantity of gasoline sufficient for his trade requirements, by failing to pay or allow him four cents per gallon commission, and by removing from plaintiff's place of business a quantity of gasoline and other personal property belonging to plaintiff, and used in connection with the sale of gasoline under the terms of the contract. Damages in the sum of $2,999 were claimed.

The defendant's answer, after admitting the execution of the contract and denying any violation of its terms, alleged affirmatively and by way of counterclaim that simultaneously with the execution of the contract, as a part of the same transaction, the parties entered into an agreement described as "Portable

Island Site Lease", a copy of which was attached to the answer as exhibit "B". This document is in two parts. By the first part, the plaintiff leased to the defendant the premises on which the service station is located for a period of five years, from July 23, 1930, at a rental of $1 per month, and by the second part the defendant subleased the same property to the plaintiff for a term commencing August 15, 1930, and ending July 22, 1935, at a rental of $8 per month. The lease gives the defendant the right to use the premises for the purpose of erecting, maintaining, and operating on the premises a service station for the distribution of gasoline and other petroleum products. The sublease gives the plaintiff the right to occupy and use the premises for the sale and distribution of petroleum products sold to him by the defendant and the plaintiff agrees not to store, handle, sell, or distribute any petroleum products other than those sold to him by the defendant, except as otherwise authorized in writing by the defendant. The plaintiff further agrees, in this instrument, to pay cash on delivery for all petroleum products purchased from the defendant or to adhere to such credit terms as the defendant might from time to time prescribe.

The answer proceeds to allege that the defendant placed upon the property certain service station equipment, consisting of a canopy, pump, tanks, pyrene extinguisher, measures, suction stub and piping, and that the defendant subleased the service station to the plaintiff, together with the equipment described for $8 per month; that exhibit "B" continued in full force and effect until on or about June 1, 1931, when the plaintiff, without cause, terminated it and also the agency agreement; that at that time there was due to the defendant from the plaintiff, rental in the sum of $24,

for the months of April, May and June, 1931; that the defendant thereupon demanded possession of the personal property, but plaintiff refused to surrender possession and used it continuously in the operation of the service station until October, 1935, and that the reasonable rental value thereof is $8 per month, by reason of which the plaintiff is indebted to the defendant in an additional sum of $408, for rental for the period from July 1, 1931, to October 1, 1935.

A second affirmative answer and counterclaim alleged that about October 1, 1935, the plaintiff converted the personal property in question and that its value was $504.

A third affirmative answer and counterclaim alleged that the plaintiff is indebted to the defendant in the sum of $147.40 for 804 gallons of gasoline which was the property of the defendant, held under consignment by the plaintiff in June, 1931, and which plaintiff sold without accounting to the defendant for the proceeds.

The court submitted to the jury the determination of the question whether the contract had been cancelled by agreement of the parties in 1931, and that question was evidently resolved in favor of the plaintiff.

The grounds of the motion for a new trial were: Insufficiency of the evidence; excessive damages; errors in law in admission of testimony over the objection of the defendant; and newly discovered evidence.

■ There was sufficient evidence to support a verdict for the plaintiff. By the terms of the contract the plaintiff was to have received delivery of gasoline from the defendant on consignment and sell it for the defendant at the retail price fixed by the latter. His total commission was to be four cents per gallon, evidently to be made from the difference between the price at which

he bought and the resale price to be fixed by defendant. In carrying out their agreement, however, the parties seem to have ignored the consignment provision, and plaintiff paid cash for the gasoline which was delivered to him. There is no contention on the part of the defendant, as we read its brief, that this practical modification of the contract relieved the defendant from its obligation to secure to plaintiff the full commission agreed upon, and in the light of the method of dealing adopted by the parties, if, as the plaintiff swore, the retail price fixed by the defendant did not leave a margin over and above the price paid by him to the defendant sufficient to cover the agreed commission, then the defendant would be liable for the deficiency.

■ The plaintiff testified that from November 2, 1930, to June 3, 1931 (before any question of termination of the contract could have arisen), he received from the defendant and resold about 12,600 gallons of gasoline, that on none of this gasoline was he paid a commission of more than three cents, and on a portion of it he was paid only one cent. The defendant urges that the plaintiff is concluded by his signature upon certain so-called "Reports of Consigned Stocks" made out for each sale of gasoline, one copy of which was given to the plaintiff, and another retained by the defendant. These documents, which were received in evidence, purport to show the quantity of gasoline sold, the selling price, the commission, and the net price. Thus, for example, the report dated March 3, 1931, indicates a sale of 178 gallons of Union gasoline, selling price nineteen and one-half cents per gallon, commission three cents, rentals one cent, and net price fifteen and one-half cents. The reports were competent evidence against the plaintiff's claim, but they were not conclusive. They are mere receipts as far as he is concerned, and subject

to explanation: *Marks v. Twohy Bros. Co.*, 98 Or. 514, 527 (194 P. 675).

■ There is also evidence coming from the plaintiff that in March and April and May, 1931, the defendant failed to live up to its agreement to supply plaintiff with his trade requirements, causing him a loss of business. The weight to be given this evidence was for the jury.

The foregoing is sufficient, we think, to dispose of the respondent's contention as to the sufficiency of the evidence respecting two of the alleged breaches of contract by the defendant.

On the claim of excessive damages, it is the defendant's position that the record shows as a matter of law that the contract was terminated on or about June 3, 1931; that, therefore, plaintiff could have sustained no damages after that time, and that at most the evidence supports a judgment for only $130, based upon the loss of one cent per gallon commission on gasoline purchased between November 22, 1930, and June 3, 1931. The contention, thus put forward in the respondent's brief, takes no account of the evidence that the plaintiff received a commission of only one cent per gallon on some of the gasoline sold before June 3, 1931, nor the evidence of damage resulting from the failure and refusal of the defendant to fill the plaintiff's trade requirements. For present purposes, however, it is sufficient to state the matter as the respondent has stated it since plaintiff concedes in his reply brief that if the contract was terminated in 1931 the damages are excessive. We are thus led to consideration of the principal question in the case, namely, what is the legal effect of the conduct of the parties during the summer of 1931? For the proper disposition of that question, a brief review of the evidence is necessary.

Prior to June 3, 1931, the plaintiff, according to his testimony had complained continuously to agents of the defendant about the failure of the defendant to pay him his full commissions. On that date he addressed a letter to the defendant which opens:

"Herewith returned the check sent by your company as June rent of my property, for the reason that you are no longer renting my property."

This is followed by complaints of various breaches of contract by the defendant, including the charge that plaintiff had not received the four cents profit per gallon agreed on, and loss of business "through your indolence and breach of contract", a claim of damages in the sum of $800, and a threat to "start action through the courts by July 1st, 1931." Thereafter, plaintiff obtained his gasoline from other sources, and no sales of gasoline were made to him by the defendant with the exception of deliveries made June 15, 16, 19, 27, and July 13. All these sales were on terms different from those called for by the agency contract. Two of them, as the only evidence in the record, the receipts, discloses, were on the basis of a commission of four cents and "allowances" of two cents, and four on the basis of a commission of two cents and "allowances" of four cents, the difference between the net price and the selling price in each instance being six cents. The nature of this allowance is not revealed by the evidence. The other sale, of July 13, is on the basis of a net price of nineteen cents and a selling price of twenty-two cents.

In the meantime representatives of the defendant called upon the plaintiff and took up with him the charges in his letter of June 3. They asked for an itemized statement of his claim for damages, and discussed with him their future relations, assuring the

plaintiff, according to his testimony, that the defendant would take care of the future operations of the plant. It was not until September 5, 1931, that the plaintiff submitted to the defendant his itemized statement. This he did by letter of that date, the total claim being in the sum of $1,176.95.

On July 21, 1931, the District Manager of the defendant company, G. W. Schattner, addressed the following letter to the plaintiff:

"For a considerable time you have refused to comply with the terms of the Portable Island site lease between yourself and this company, and under date of June 3rd you took the position that there was no longer any leasing agreement between us.

"Because of the failure and refusal on your part to perform under the terms of the lease, this company has decided to consider the same cancelled and at an end, and hereby demands that you surrender possession immediately of the pumps and equipment now located or installed on the property belonging to this company."

At the time that this letter was written plaintiff was in default under the sublease for the April, May and June rentals. On the following day, while plaintiff was in California, the defendant sent some employees to the service station who pumped the gasoline out of the tanks and hauled it away along with some of the service station equipment. They also locked the pumps and the station. The plaintiff, on his return, demanded restoration of the gasoline, and defendant complied with his demand.

After this there were no dealings between the parties except a sale of lubricating oil in August, 1931. Plaintiff remained in business at the service station, selling gasoline of other wholesalers from the tanks and pumps placed there by the defendant, until 1933,

when he made a permanent arrangement with the Richfield Oil Company, which painted the buildings and pumps with its own colors and emblems, and sold its own products from the station.

On November 25, 1935, the plaintiff sold the property on which the service station was located, together with the defendant's equipment and tanks, to Raymond Webb and Fred B. Anderson. This action was commenced March 30, 1936.

The complaint is brought on the theory that the contract was in full force and effect until July 22, 1935, that plaintiff has fully performed his part of the contract except as he was prevented from performing by the defendant, and, therefore, that he is entitled to recover damages sustained on account of commissions lost during the entire period of five years.

■ With this position we are unable to agree. The agency agreement and the lease having been executed at one time are to be treated as one contract: *Shell Oil Company v. Stiffler*, 87 Utah 176 (48 P. (2d) 503). By the terms of that contract, broadly stated, the defendant appointed plaintiff as agent for the sale of its gasoline at the particular service station described, and agreed to supply plaintiff's trade requirements and to pay him a commission of four cents per gallon on all gasoline sold by him; while the plaintiff, on his part, agreed to sell defendant's products exclusively, became defendant's tenant for the life of the agency, undertook to pay defendant a rental of $8 per month, and further agreed "not to store, handle, sell, or distribute thereon any petroleum products other than those sold to him by Company, except as otherwise authorized in writing by Company."

■ The plaintiff, by his letter of June 3, in effect informed the defendant that he repudiated and would no

longer be bound by the terms of the contract contained in the leasing agreement, since his covenants under the sublease necessarily fell with his cancellation of the lease to the company. This declaration of refusal on the plaintiff's part to carry out the contract thereafter according to its terms was an anticipatory breach, which released the defendant from any further obligation to perform. The rule is stated in *Johnson Forge Co. v. Leonard and Co.*, 3 Pennewill (Del.) 342, 350 (51 Atl. 305, 308; 94 Am. St. Rep. 86; 57 L. R. A. 225), quoted with approval in *Armsby v. Grays Harbor Commercial Co.,* 62 Or. 173, 182 (123 P. 32):

"If a default by one party in making particular payments or deliveries  *  *  *  is accompanied with an announcement of intention not to perform the contract upon the agreed terms, or if, in the language of the court below, the default is accompanied with a deliberate demand, 'insisting upon new terms different from the original agreement,' the other party may treat the contract as being at end."

To the same effect see *Miller v. Beck*, 72 Or. 140 (142 P. 603); *H. R. Wyllie China Co. v. Vinton*, 97 Or. 350 (192 P. 400); § 318, Restatement of the Law of Contracts.

■ The plaintiff's action was not justified, even though it be assumed that the breaches charged against the defendant were such as under different circumstances would have warranted an abandonment by him and his resort to an election of remedies for renunciation by the other party to the contract, a question which we find it unnecessary to decide.

Taking as true the plaintiff's evidence that the defendant had failed to pay him the full commission agreed upon, and had not at all times supplied him with his gasoline requirements, his conduct brought

him within the rule announced in § 309 of the Restatement of the Law of Contracts, as follows:

"Where the duty of a party to a bilateral contract has been discharged by the failure of a condition to exist or to occur by the actual or threatened nonperformance of a return promise, he is again subjected to the duty if he renders any further performance, or assents to the rendering by the other party of any further performance of a condition or promise beyond what is due as the exchange for performance previously rendered, provided that he renders or assents to such performance (a) with knowledge of the facts establishing his discharge, or (b) without such knowledge, if (1) within a reasonable time after acquiring knowledge he fails to notify the other party that he asserts a discharge, or (2) the other party, not then having received such notification, materially and reasonably changes his position to such an extent that it would be unjust to allow a discharge."

■ The alleged failures to make deliveries prior to June, 1931, occurred in March, April, and May, 1931. Commencing May 12, the undisputed evidence contained in "Reports of Consigned Stocks" shows that deliveries were made and accepted by the plaintiff on that date, and on May 15, 16, 20, 22, 26, 29, June 1 and 3. The delivery of June 3 was of 100 gallons and the report of consigned stock of that date shows a selling price of sixteen and one-half cents, a commission of three cents, rentals of one cent, and net price of twelve and one-half cents. There is no evidence of any violation by the defendant of the terms of the contract relating to the commission to be paid on this consignment of June 3, before the letter of that date was written. Thus, at that time, whatever may have been the defendant's previous delinquencies, the plaintiff, having knowledge of the facts, assented to further performance

by the defendant and under the rule which we have stated recreated his duty under the contract.

■ After that the parties ceased to act under the contract. The declaration of the company's agent to the plaintiff that the defendant would take care of the future operations of the plant is ambiguous, but if it be interpreted as a manifestation of defendant's willingness to go on with the contract, it did not subject the defendant to further duties, because there was no consideration for it and no change of position by the plaintiff following it. See § 310, Restatement of the Law of Contracts. By its letter of July 21, and its action on the next day in removing gasoline, equipment, and locking the station, the defendant gave unmistakable evidence that it considered the contract at an end. And, for that matter, so did the plaintiff when, following this incident, he wrote to the defendant under date of July 27, 1931, a letter complaining of the defendant's action and containing this sentence:

"When you settle with me you can have your pumps and equipment. However, I am willing to go more than half way with you, when you settle with me I will buy your pumps from you and save you the trouble of moving them and the expense of having to cart them away to storage."

His subsequent conduct lends emphasis to this view, for from that time on, in violation of the express provisions of his contract, he sold gasoline of other companies from the tanks and pumps of the defendant, and in 1933 leased the service station to a rival company and permitted the buildings and pumps to be painted with the colors and emblems of that company.

■ We conclude that in view of the actions of the parties as disclosed by the record and the applicable

legal principles to which attention has been called the defendant was discharged from any further duty of performance after June 3, 1931, and was not liable in damages for breach of contract on account of anything that occurred after that time. Hence, the award of damages was without support in the evidence and evcessive, and the circuit court did not err in setting aside the judgment and granting a new trial.

From this it follows that the plaintiff cannot recover in this action for the alleged wrong of the defendant in removing personal property and closing the service station on July 22, 1931. Whatever may be the rights of the plaintiff arising out of that incident, they cannot be asserted in this action for breach of contract, since the contract at that time had been terminated.

This disposition of the case makes it unnecessary to consider the other grounds of the motion for a new trial. The order setting aside the judgment and granting a new trial is affirmed and the cause is remanded for further proceedings in harmony with this opinion.

BELT and BAILEY, JJ., not sitting.