Argued October 31, reversed with directions December 12, 1951,
petition for rehearing denied with correction in judgment
February 6, 1952

## SWICK *v.* MUELLER ET UX.

238 P. 2d 717

L. Z. *Terrall,* of Union, argued the cause and filed a brief for appellants.

*E. M. Sabin,* of Union, argued the cause for respondent. With him on the brief was Carl G. Helm, Jr., of La Grande.

Before BRAND, Chief Justice, and ROSSMAN, LUSK, LATOURETTE, WARNER and TOOZE, Justices.

LATOURETTE, J.

This is an action for the recovery of real and personal property, and damages for the unlawful withholding thereof at the rate of $13 per day, predicated on the breach of a written contract entered into between plaintiff and defendants. Defendants returned the property to plaintiff on the theory that plaintiff herself had breached the contract. The trial court instructed the jury to return a verdict in favor of plaintiff for the reasonable rental value of the premises for a period of one month, the time during which the

defendants occupied the premises after their alleged breach of the contract, whereupon a verdict was rendered for plaintiff in the sum of $103. Defendants appeal.

The basis of the law suit was a contract entered into between the parties wherein defendants, the purchasers, agreed to purchase certain real property for the sum of $11,000, payable as follows:

"* * * Five Hundred Dollars in cash, the receipt of which is hereby confessed and acknowledged; Five Hundred Dollars March 22nd, 1950; Five Hundred Dollars April 1st, 1950; Five Hundred Dollars as soon as the parties of the second part receive a certain insurance check in said amount, but payable in any event not later than June 1st, 1950; One Hundred Dollars June 1st, 1950, and a like sum of One Hundred Dollars on the First Day of each month thereafter until the full purchase price of Eleven Thousand Dollars shall have been paid, together with interest on all deferred payments at the rate of six per cent per annum, interest payable quarter-annually."

The contract contained the following provision:

"It is further agreed that time is of the essence of this agreement as to each and all payments to be made by said parties of the second part, and should said parties of the second part be in default for a period of thirty days, of any payment to be made by them, that then, it shall be lawful for said party of the first part to declare this agreement forfeited and void, and thereupon, all payments made shall be and become forfeited to said party of the first part, as rental or liquidated damages, and said party of the first part shall be entitled to the possession of said premises."

The foundation of plaintiff's complaint may be based on two propositions:

(1) an actual breach, i.e., "The defendants failed

and neglected to pay said sums, or any of them on the 30th day of June, 1950, or at any time prior thereto or at all.''; and,

(2) an anticipatory breach, i.e., ''On the 1st day of July, 1950, the plaintiff, through her agent and attorney called upon the defendants and demanded payments of said mentioned sums of $500 and $100, and $142.50 and the said defendants refused to pay the same or any part thereof, stating that they would not make any more payments called for by said agreement.''

As an exhibit to plaintiff's complaint, there was attached thereto the following document:

''EXHIBIT 'B'

''Union, Oregon, July 1st, 1950

''To Edward J. Mueller and Elizabeth A. Mueller:

''On or about June 1st, 1950, I called upon you and asked payment of the sums due me under our contract of March 20, 1950. You stated that you had the money to make the payments but would not pay then as under the agreement you were allowed 30 days after default in making payment before a forfeiture could be declared, and that you proposed to take the 30 days of grace before making payment. At that time Mr. Sabin who was present, and acting as my agent and attorney told you that upon your failure to make the payments due under the said contract by the 30th day of June, 1950, I would declare the said contract forefeited and void and demand possession of the premises.

''You are hereby notified that because of your failure to keep and perform the covenants and agreements mentioned in said contract by you to be kept and performed in the following particulars, to-wit:

''The payment of $500.00 due and payable June 1st, 1950;

''The payment of $100.00 due and payable June 1st, 1950;

"The payment of the interest due on deferred payments due June 20, 1950, in the sum of $142.50; and the failure to keep the property mentioned in the contract insured against loss by fire, as provided in said agreement.

"I hereby declare forfeited, void and terminated that certain agreement in writing, dated March 20th, 1950, made and entered into between you and me for the sale and purchase of the real and personal property therein described and now occupied by you as a cleaning and pressing establishment, located on Main street in the City of Union, Union County, State of Oregon, and demand that you immediately vacate said premises and deliver possession thereof to me. E. M. Sabin, as my agent and Attorney is authorized to receive the keys of the building and take possession of the real and personal property.

"MARGARET SWICK"

Defendants' amended answer, among other things, alleged a repudiation of the contract on the part of plaintiff, in which they acquiesced, the answer containing, in part, the following allegations:

"That on the 1st day of July, 1950, and at approximately the hour of 11 o'clock of said date, and before the defendants had been in default for a period of thirty days, as provided by said contract, the plaintiffs did serve upon the defendants and each of them, a notice in writing that she declared the contract between the parties to be forfeited, void and terminated, for failure to make the payments that were payable on June 1st, 1950, and the failure to pay the interest that was payable on June 20th, 1950.

* * *

"That the defendants did consent to the cancellation and termination of said contract of sale, and do hereby consent to such cancellation and termination of said contract as declared by the plaintiff thereby effecting a cancellation and

termination of said contract by the mutual consent of the parties, and entitling each of the parties to be placed in statu quo.''

Defendants demanded the return of all the moneys which they had paid under the contract, less the reasonable rental value of the property for the period during which defendants were in possession of the same.

## ACTUAL BREACH

■■ The court properly took from the jury that there was an actual breach of the contract on the part of the defendants in failing to make the payments under the contract on July 1, 1950, when plaintiff demanded payment of the same at 11 a. m. of said date as, at that time, the 30-day grace period allowed by the contract had not expired. In any event, plaintiff could not object to such ruling since she has not appealed from the same.

## ANTICIPATORY BREACH

At the trial the court instructed the jury as follows:

" 'Perhaps I should announce at the inception of this argument by the attorneys that the evidence in this case shows that the defendant, Mr. Mueller, on the first day of July made the statement that he would not make any further payments on the contract, and at that time said he would make no more payments on the contract. In the view the Court takes of the law of this case, because of the fact that he wrongfully breached his contract at the time, that would deprive him of any right to recover on the counterclaim which he has interposed in this case, and hence the Court has held, during this little session here, that the defendants' counterclaim should be taken from the jury, and under the law is not to be considered by the jury.

" 'The question, of course, comes up as to the amount of damages to which the plaintiff would be entitled because of the failure to return the premises to her on the first day of July. That is the question which will be submitted to you.' "

The court then instructed the jury that the measure of damages to be awarded to the plaintiff would be based on the reasonable rental value of the property occupied by defendants for a period of one month, i.e., from July 1, 1950, to July 30, 1950, inclusive. The jury returned a verdict in favor of plaintiff and against defendants in the sum of $103.

The court based its instructions on defendants' alleged abandonment on the following testimony of defendant, Edward J. Mueller:

"Q As I understand you,—do you not recall Mrs. Swick and Mr. Sabin calling on you on the first of July?

"A The truth of the matter is that they didn't.

"Q The first time you saw Mr. Sabin that day is when he came in and asked you if you would pay the money, and you said 'No.'?

"A That is right. She walked past the door, but didn't come in.

"Q But I mean the first conversation you had with him that day—

"A (Interrupting) That is right.

"THE COURT: Let him finish the question.

"Q (Continuing)—is when he said, 'Are you going to make the payments?'—or words to that effect, and you said 'No'?

"A That is the only conversation I had with him that day.

"Q And then he served you—or Mr. Roberts— one or the other, served you—with that notice?

"A Yes."

Defendants duly excepted to the court's instructions, taking from the jury defendants' counterclaim, and assign as error the giving thereof.

The above-quoted testimony of Mueller, upon which the court based its ruling, would not be conclusive that defendants had anticipatorily breached the contract. The plain language itself does not necessarily sustain such construction nor plaintiffs' allegation "that they would not make any more payments called for by said agreement."

■ When one considers Mueller's testimony in conjunction with plaintiff's declaration of forfeiture, Exhibit "B," wherein it is stated that when they called upon Mueller on June 1, 1950, for payment he stated that he had the money but would take his 30 days of grace to pay the same, it is clear that when Mueller was importuned at 11 a. m. on July 1 to make the payments, he could very well have been talking about making payments at that hour and not otherwise. It was, therefore, a jury question.

■ The general rule is that before a party to an executory contract may be said to have anticipatorily breached the same he must refuse by acts or deeds or perform his obligations under the contract positively, unconditionally, unequivocally, distinctly and absolutely. See *Ratcliffe v. Union Oil Co. of Calif.*, 159 Or 221, 229, 231, 77 P2d 136; *Cornely v. Campbell*, 95 Or 345, 377, 186 P 563, 187 P 1103; *Suburban Improv. Co. v. Scott Lumber Co.*, 67 F2d 335, 90 ALR 330; 12 Am Jur, Contracts, 972, § 393; Restatement of the Law, Contracts, 475, § 318; 5 Williston, Contracts, (rev ed) 3724, § 1324; 3 Words & Phrases, (perm ed) 527.

As an example of an unequivocal refusal to be bound by the terms of a contract, we quote the follow-

ing letter from *Ratcliffe v. Union Oil Co. of Calif.,*
supra: " 'Herewith returned the check sent by your
company as June rent of my property, for the reason
that you are no longer renting my property.' " Speak-
ing through Mr. Justice LUSK, we said:

> "The plaintiff, by his letter of June 3, in effect
> informed the defendant that he repudiated and
> would no longer be bound by the terms of the
> contract contained in the leasing agreement, since
> his covenants under the sublease necessarily fell
> with his cancellation of the lease to the company.
> This declaration of refusal on the plaintiff's part
> to carry out the contract thereafter according to
> its terms was an anticipatory breach, which re-
> leased the defendant from any further obligation
> to perform."

■ There is another rule of law applicable to the
present case, and that is where one breaches a contract
anticipatorily, before it may become an effective
breach, the other party must accept and act on the
same. In 12 Am Jur, Contracts, 974, § 395, we read:

> "Where one party has repudiated an execu-
> tory contract, the adverse party has an election to
> treat the contract as broken or not so to treat it.
> The refusal to perform must be treated and acted
> on as a distinct and unequivocal absolute refusal
> to perform the promise. It is commonly said that
> there is no breach or that the repudiation does not
> operate as a breach until such repudiation is treated
> as a breach by the other party. Upon the repudia-
> tion of an executory agreement by one party, the
> other must make his choice between the courses
> open to him."

See *Dibble v. Hodes Co.,* 132 Or 596, 277 P 820, 286
P 554.

■■ There is no claim made by plaintiff, either in
her pleadings or otherwise, that she accepted or acted

on defendants' alleged breach. On the other hand, plaintiff's notice of termination of the contract, "Exhibit B," affirmatively shows that plaintiff terminated the contract not on account of an anticipatory breach but by reason of an alleged actual breach, i.e., defendants' failure to pay the installments not then due. Having terminated the contract on the basis of an actual breach, plaintiff cannot at a later time change her position and base her claim on an anticipatory breach.

In their brief defendants state that:

"The amounts paid upon the contract by the appellants, with the minor exception of $32.55, which the appellants claimed to have paid on insurance, are admitted by the respondent; the dates of such payments are admitted; and the reasonable rental value of the property has been determined by the jury; and may we suggest that this court determine this matter between the parties."

In other words, defendants wish us to invoke Article VII, § 3 of the Oregon constitution, which, in part, follows:

"* * * or if, in any respect, the judgment appealed from should be changed, and the Supreme Court shall be of opinion that it can determine what judgment should have been entered in the court below, it shall direct such judgment to be entered in the same manner and with like effect as decrees are now entered in equity cases on appeal to the Supreme Court."

■ The purpose of the above provisions is to facilitate the disposal of causes on appeal, where proper, and the prevention of costs and disbursements resulting from a second trial. *Wright v. Wimberly,* 94 Or 1, 184 P 740.

■ We have repeatedly held that where a party bound by an executory contract repudiates his contract before the time for preformance the other party may treat the contract as terminated and maintain an action for the recovery of the moneys paid under such contract, with interest, less the reasonable rental value of the property during the period of occupancy. See *Grider v. Turnbow,* 162 Or 622, 94 P2d 285; *Olson v. Pixler et ux.,* 138 Or 250, 6 P2d 23; *Johnson et al. v. Berns et al.,* 111 Or 165, 209 P 94, 224 P 624, 225 P 727; *Cornely v. Campbell,* supra, and cases cited therein.

■■ He must act promptly and within a reasonable time, and, " * * * the right of action for such breach is not affected by subsequent nonperformance of the acts which were such conditions precedent." 12 Am Jur, Contracts, 966, § 388. See also 55 Am Jur, Vendor and Purchaser, 948, § 554; 12 Am Jur, Contracts, 1029, § 447.

12. In the present case defendants allege in their answer that they assented to and acquiesced in plaintiff's breach of the contract, and it is admitted that the property involved was restored to the plaintiff within 30 days from the time of plaintiff's declaration of forfeiture. It appears from the record that the contract of sale included both real and personal property, the personal property consisting of a cleaning and pressing establishment. Although no contention was made to the contrary, we hold that under the circumstances of the case 30 days was a reasonable time for defendants to have acted.

We are of the opinion that from the record before us we can determine what judgment should have been entered in the court below.

Since plaintiff breached the contract in the case at

bar by terminating the contract at a time when defendants were not in default, defendants are entitled to a return of the moneys paid by them to plaintiff under the contract, with interest, less the rental value of the premises during the period of defendants' occupancy.

■ The amount of money paid in by defendants is admitted. The jury found the rental value of the premises to be $103 for one month. Multiplying this amount by four-and-one-third months, the period of defendants' occupancy of the premises, we arrive at $447, the amount with which plaintiff is entitled to be credited.

Judgment will be entered in favor of defendants against plaintiff for the sum of $1,500, with interest at the rate of six per cent per annum as follows: on $500 from March 20, 1950; on $500 from March 28, 1950; and on $500 from March 29, 1950, less the above credit of $447; together with costs and disbursements.

Reversed with directions.