## PIKE COUNTY BOARD OF EDUCATION et al. v. VARNEY et al.

Court of Appeals of Kentucky.

Dec. 5, 1952.

Hobson & Scott, Pikeville, for appellant.

F. M. Burke, Pikeville, J. C. Cantrell, Huddy, for appellee.

STANLEY, Commissioner.

The judgment is for $5,000 for personal injuries sustained by Ronnie Varney, nine years old, when his bicycle collided with a school bus driven by Willie Blevins. The Board of Education of Pike County operated the bus for the transportation of pupils, KRS 158.110, and carried liability or indemnity insurance against the negligence of the driver. KRS 160.310. The appellants, the Board and Blevins, contend the court should have directed a verdict for them.

But for a photograph it would scarcely be possible to understand the situation for the witnesses did a great deal of talking with their hands and used the terms "up" and "down" and the like. The accident occurred in the village of Hardy. For the purpose of description we will assume that the highway runs east and west and that the bus was traveling eastwardly. An unpaved lane or street, thirty feet wide, intersects the highway from the south at right angles. The schoolhouse with a fence around it is in the southwest corner. There is a 4 or 4½ foot concrete sidewalk along the west side of the lane and around the southwest corner, close to the fence. Between the black-top paving of the highway is a space or berm 5 or 6 feet wide. It is of gravel or hard dirt and is on a level with the paving and the sidewalk.

The boy testified he was coasting down the center of the lane, which is inclined toward the road, and turned the corner, westwardly, on the sidewalk. The bus struck his handlebar. He had seen the approaching bus and "held back" his bicycle in order to be able to make the turn and not cross the road in front of the bus. The boy was thrown to the ground and suffered severe injuries. A young lady standing inside the school yard near the mouth of the lane testified the boy turned on the sidewalk and that the bus was "off of the hard top." She elucidated her testi-

mony as to the respective locations with her hands and by a rough sketch presented to her. The transcript is interspersed with the word "indicating", which makes the record incomplete and partially incomprehensible. Presumptions that may be indulged from a record of this kind must be against the appellants, for it is their obligation to establish error in the trial.

It was shown that only the end of the right handlebar of the bicycle came in contact with the bus. It was with such force as to turn it in its socket. The body of the bus extended over the wheels and the point of contact was just above the right rear wheel.

The driver of the bus, Blevins, testified that he was going 15 to 18 mph and saw the boy on the bicycle coming down the lane on the sidewalk, as he insisted, 15 or 20 feet from the intersection, "right toward the bus", and, said he, "suddenly the accident happened." He applied his brakes and stopped the bus in about a length and a half, which would be 33 feet. The boy had not turned the corner and the bicycle hit the bus "immediately after I saw him." He heard the impact but did not see it because his view was obstructed by the body of the bus. Of great significance is the omission by the driver and his son to say whether the bus was on the black top or on the gravel or dirt berm between it and the sidewalk at the time of the collision. Blevins does say that when he saw the boy coming down the lane, he was on the "hard top road." He placed a mark on the photograph introduced by him to indicate where the accident happened. It is on the berm about midway between the black-top and the edge of the sidewalk. He testified when the bus had come to a stop, the right rear wheels were off the black-top and "probably six feet from this sidewalk" * * * "down that way". At another point he stated the wheels were "still on the hard road" or close to the edge of the black-top when he came to a stop. The driver had not cut the bus to the left or towards the center of the road when he saw the boy coming down the lane into his path, but kept straight ahead. His son testified he did not see the boy before he was struck. His testimony related to the condition and location of the boy and bicycle when he went to his aid after stopping. There is no evidence as to whether the driver blew the horn or not, but that may not be of significance since the boy admitted seeing the approaching bus.

The jury was authorized to believe the boy was on the sidewalk at the moment of the collision and that the wide body of the bus had extended over it or at least over the berm of the road. There was little if any evidence, as we have shown, that it was on the black-top surface of the highway. While one may believe the boy came down the lane so fast that he could not or did not make the turn as sharply as he and the young lady say he did, and that he swung out against the side of the bus, still the evidence is the other way. It was within the province of the jury to accept that as the true version and to find the boy was not contributorily negligent. Therefore, the case was for the jury.

The other point of improper comment by the trial judge is so trifling that it does not deserve discussion.

Judgment affirmed.