**AMERICAN OIL COMPANY, Appellant,**

**v.**

**J. H. BROOKS et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 24, 1967.

As Modified on Denial of Rehearing March 29, 1968.

H. M. Tye, Barbourville, O. Grant Bruton, Hubert Willis, Middleton, Seelbach, Wolford, Willis & Cochran, Louisville, for appellant.

William S. Tribell, Pineville, Charles G. Cole, Jr., Carlos B. Pope, Barbourville, for appellees.

STEINFELD, Judge.

J. H. Brooks sued American Oil Company on a claim that the oil company had failed to make rental payments to the National Bank of Commerce of New Orleans, Louisiana. The bank instituted a separate action against Brooks to recover on a note, and Brooks filed a third party complaint against American seeking indemnity for any recovery that the bank might make against him. The two actions were consolidated. American has appealed from a judgment which required Brooks to pay the bank and granted indemnity to Brooks. We affirm.

On October 22, 1952, Sillus Brooks (brother of J. H. Brooks) and Jennie Brooks leased land near Fourmile, Bell County, Kentucky, to Pan-Am Southern Corporation, an oil and gasoline company, for a period beginning January 1, 1953, and running for ten years. The rental was $182.25 per month. The lease provided that Sillus Brooks construct a service station at a cost of $18,000.00. A controversy arose with respect to the improvements and by agreement the rental was reduced. On April 27, 1953, the tenant subleased the property to J. H. Brooks "on a yearly basis". Pan-Am also had entered into an "oil distributors sales contract" with J. H. Brooks.

On July 24, 1953, Charles G. Cole, Sr. and Mattie Hayes Cole, his wife, leased land near Barbourville, Knox County, Kentucky, to J. H. Brooks for a term of ten years beginning December 1, 1953. Shortly after the lease was signed Brooks was given possession and constructed an automobile service station on that land at a cost of approximately $18,000.00. On August 10, 1953, the same oil company entered into a contract whereby J. H. Brooks agreed to sublease that real estate to the oil company at a monthly rental of $182.34. The company and J. H. Brooks entered into a distributors sales contract for this location and Pan-Am leased the property back to Brooks.

On November 6, 1953, Charles and Lillie Mae Patterson leased land on U. S. Highway 25 E in Knox County to J. H. Brooks for a term of ten years. The lease stipulated that Brooks would build an automobile service station and that when constructed he would sublease it to Pan-Am at a monthly rental of $177.19. To finance the construction of the improvements on the Patterson property, on August 4, 1954, J. H. Brooks executed his promissory note in the amount of $17,500.00 to the National Bank of Commerce of New Orleans. To secure the bank the Pattersons gave a mortgage on the property and Brooks assigned rental due him under the lease. The note provided for installment payments at the rate of $177.19 per month beginning August 1, 1954, with the balance due and payable on August 1, 1964.

After that transaction with the bank, Pan-Am subleased the Patterson property back to Brooks on a year to year basis at the rental of $177.19 per month. Brooks agreed to pay the rental to Pan-Am and Pan-Am agreed to forward that rental to the bank to apply on the Brooks note.

Pan-Am and Brooks entered into an oil distributors agreement for the Patterson property the same as with the other two stations. The sublease with respect to that property was terminable by the oil company under the following provisions:

"Lessee shall have the privilege of using said premises for any purpose including, but not limited to, the operation of a gasoline service station, and for the sale of tires, tubes, and automobile accessories and any other commercial activity, and shall have the privilege of erecting on

said premises or to make arrangements with third persons to erect thereon such buildings, driveways, curbing or other improvements or equipment as may be necessary or desirable for the proper use of said premises for the aforesaid purposes. In case Lessee shall be unable to obtain from the proper public authorities, municipal, state or otherwise, any permit or license necessary for the operation of a gasoline service station upon said premises, or in case any such permit or license, if obtained, be afterward revoked without fault of Lessee, or should the use of said premises for any of the purposes stated above be restricted by the enactment of any state or municipal law or ordinance or by legal proceedings or by any federal government action in such manner as to make the operation thereof unprofitable, or if the use of said premises for any of the purposes stated above be restrained or enjoined by judicial process or otherwise, then Lessee shall have the right to terminate this lease by giving Lessor ten day written notice of its intention so to do, and shall thereupon be relieved from all liability hereunder. In the event Lessee is deprived of the use of said property as a gasoline service station, in whole or in part, or in the event the normal operation of said gasoline service station be curtailed, by reason of any federal, state or local government action, the Lessee shall be entitled to a proportionate diminution of all rentals due hereunder during such period of deprivation of use or curtailment of said operations."

In 1957 American Oil Company became the successor of the Pan-Am Southern Corporation and assumed all of its obligations and became the beneficiary of all of the contracts which are involved in this litigation.

On October 10, 1958, Brooks and American entered into an oil distributors sales contract which superseded the earlier distributors contracts between Brooks and Pan-Am. Among other things it provided for distribution of American Oil products by Brooks in areas including the three mentioned locations.

In 1960 the Patterson station was materially and adversely affected by the relocation of U. S. 25 E. During that year Brooks discontinued making rental payments to American and ceased handling American products at all three locations. He operated the stations under the name of another major oil company. American discontinued making payments to the bank but made no effort at that time to evict Brooks from any of these properties.

Brooks sued American for specific performance to require it to make the payments to the bank and to pay the rental reserved in the Patterson lease. He contended that American's failure to make the payments to the bank was a violation of its agreement. The bank brought a separate suit and named Brooks and Patterson as defendants. It demanded judgment against Brooks for the balance due on the note, and sought to enforce its mortgage on the Patterson property. It did not make American a party to that action. The bank alleged that there was a debt due it of $7,851.02. In the bank's suit Brooks filed a third party complaint against American whereby he sought indemnity for any judgment that the bank might recover against him. The actions were consolidated. American counterclaimed against Brooks on various claims.

A summary judgment decreed that the bank should recover from Brooks $7,851.02 with interest, and that Brooks should recover the same amount from American. Later an amended judgment was entered which reduced the award in favor of Brooks against American from $7,851.02 to $6,261.02, but there was no change in the judgment in favor of the bank against Brooks. The reason for the reduction was that the court decided that it had made an error in the adjudication of the counterclaim. American now contends that Brooks

was not entitled to a summary judgment for the several reasons which we will discuss.

American argues that the Knox Circuit Court did not have venue to entertain the suit which Brooks filed against American. It contends that the subject matter of the suit was a lease that had been assigned to the National Bank of Commerce of New Orleans and was to be performed in Louisiana; that the products mentioned in the distributors contract were to be shipped to Brooks' home in Bell County and that American did no business whatsoever in Knox County. American also contends that the lease on the Patterson property was executed in Louisiana, but Brooks counters by arguing that American had signed the lease and that the final action of the transaction was its execution by Brooks which took place in Knox County. He argues that the contract was made in Knox County and that the circuit court of that county was the proper place for an action that arose out of that contract. KRS 452.450.

American relies on Wilgus v. Commonwealth, 9 Bush. 556 (1873) and Edwards v. Bernstein, 231 Ky. 100, 21 S.W.2d 133 (1929) in support of its claim that a lease is personal property and that the location of the property leased is immaterial. Caudill v. Little, Ky., 293 S.W.2d 881 (1956).

■ American argues that the conflict as to the place where the lease was executed is an issue of a material fact and that the summary judgment should not have been granted to Brooks. CR 56.03. It cites Schiber v. City of Louisville, Ky., 324 S.W. 2d 822 (1959); Fletcher v. Indianapolis and Southeast Trailways, Inc., Ky., 386 S.W.2d 264 (1965) and Robert Simmons Construction Co. v. Powers Regulator Co., Ky., 390 S.W.2d 901 (1965). American relies upon testimony contained in certain depositions. They were not filed in evidence or in opposition to the motion for summary judgment. They were not included in the rec-

ord submitted to this court. We cannot consider the contents of these depositions. Harmon v. Harmon, 227 Ky. 341, 13 S.W.2d 242 (1928); Harned, et al v. Smoot, 306 Ky. 813, 209 S.W.2d 485 (1948); Pike County Board of Education v. Varney, Ky., 253 S.W.2d 253 (1952); Crowe v. Taulbee, Ky., 350 S.W.2d 620 (1961); Travelers Indemnity Company v. Patrick, Ky., 386 S.W. 2d 256 (1964); Ford v. Gilbert, Ky., 397 S.W.2d 41 (1965) and Com., Dept. of Highways v. Richardson, et al, Ky., 424 S.W.2d 601 (decided November 10, 1967).

Brooks relies upon Holcomb v. Kentucky Union Co., 262 Ky. 192, 90 S.W.2d 25 (1936) and Trinity Universal Ins. Co. v. Mills, 293 Ky. 463, 169 S.W.2d 311 (1943).

■ American is a corporation to which KRS 452.450 applies. The principal part of the lease was the agreement to operate an automobile service station on the land in Knox County. There was venue in the Knox Circuit Court. Torrent Lodge v. National Surety Co., 231 Ky. 302, 21 S.W. 2d 439 (1929); Holcomb v. Kentucky Union Co., 262 Ky. 192, 90 S.W.2d 25 (1936); Glasscock v. Louisville Tob. Whse. Co., 31 K.L.R. 702, 103 S.W. 319 (1907); Dye Bros. v. Butler, 209 Ky. 199, 272 S.W. 426 (1925).

American also contends that granting a judgment to Brooks was error because the operation of the three stations was a "package agreement" and so accepted by the parties. It argues that it would be inequitable to permit Brooks to repudiate part of the "package agreement" and retain the benefits of the other leases. It cites cases and texts which hold that separate written documents (including oil station leases) between the same parties and relating to the same subject matter are to be construed together as one transaction. Lynch v. Bank of American National Trust & Savings Association, Calif., 2 Cal.App.2d 214, 37 P. 2d 716 (1935); 5 West Ky. Digest, Contracts, 126 A.L.R. 1375, 83 A.L.R. 1416; Ratcliff v. Union Oil Co. of California, 159 Or. 221, 77 P.2d 136 (1938). Brooks counters by arguing that the Patter-

son Cole and the Sillus Brooks transactions were not a "package agreement" because they involved separate instruments, properties, people, circumstances and that none of the writings refers to the others. He also relies on the cancellation in May 1958 of the lease which he, J. H. Brooks, had with American on the Sillus Brooks' property. He supports these contentions on other occurrences which he says are revealed by certain depositions. For the reasons heretofore expressed we cannot consider so much of the facts on which Brooks relies which are found only in the unfiled depositions. See Harmon v. Harmon, supra, and other cases cited above.

From the facts which we may consider it is our opinion that the matter in litigation which substantially involved only the Patterson transaction is not so mingled or intertwined with the other leases, stations and transactions that it may not be separately decided. There seems to be no justiciable controversy in this court between any of the parties with respect to the Cole or Sillus Brooks properties.

In its original answer American made certain allegations in an effort to establish that there had been a settlement of all differences between the parties. It is our opinion that the facts alleged did not have the affect of releasing American from its obligation to pay the bank the rental which it agreed to pay for the Patterson property.

■ The last contention of American is that it had the right to terminate the lease on the Patterson property by reason of the fact that the U. S. Highway 25 E had been relocated. It relies upon the provisions of Clause 11 of the lease which we have heretofore quoted in this opinion. The word "restricted" is dispositive of this argument. The road on which the station was located was not changed and the use of the property was not restrained, limited or confined. These are the meanings courts have given to the word "restricted". Dart v. City of Gulfport, 147 Miss. 534, 113 So. 441

(1927); Forest Land Co. v. Black, S.C., 57 S.E.2d 420 (1950). We do not construe the language in Clause 11 to authorize American to terminate the lease under the facts in this case.

The judgment is affirmed.

WILLIAMS, C. J., and MILLIKEN, MONTGOMERY, OSBORNE and PALMORE, JJ., concur.