Gary **KIRKLAND**; David B. **Andersen**; Bradley D. **Eagleston**; Diana **Johnston**; Michael **McCoy**; Claire **Collins**; Joan B. **Stanford**; Richard **Oare**; James E. **Sullivan**, Plaintiffs–Appellees,

v.

**LEGION INSURANCE COMPANY,**
a Pennsylvania corporation,
Defendant–Appellant.

Gary **Kirkland**; David B. **Andersen**; Bradley D. **Eagleston**; Diana **Johnston**; Michael **McCoy**; Claire **Collins**; Joan B. **Stanford**; Richard **Oare**; James E. **Sullivan**, Plaintiffs–Appellees,

v.

**Legion Insurance Company, a
Pennsylvania corporation,
Defendant–Appellant.**

Nos. 02–35490, 02–35592.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 7, 2003.

Filed Sept. 12, 2003.

---

Richard A. Lee, Bodyfelt Mount Stroup & Chamberlain LLP, Portland, OR, and Richard M. Layne, Layne & Lewis, LLP, Portland, OR, for the defendant-appellant.

Michael E. Farnell, Hagen Hirschy Dilorenzo & Grein, PC, Portland, OR, for the plaintiffs-appellees.

Before: WALLACE, TROTT, and TASHIMA, Circuit Judges.

WALLACE, Senior Circuit Judge.

Legion Insurance Company (Legion) appeals from two orders issued by the district court: 1) an order dated March 29, 2002, directing it to pay over $9.5 million into the court's registry to provide funds for three settlement agreements, and 2) an order dated May 24, 2002, holding Legion in contempt for failure to pay the money into the court's registry and directing Legion to pay an additional $5,000 a day until the full amount is deposited with the court. We consolidated the appeals and have jurisdiction over these orders pursuant to 28

U.S.C. § 1291 and 1292(a)(1), and we reverse.

## I.

The plaintiffs-appellees (*Schultz* trustees) are trustees of a health and welfare trust plan. Plan beneficiaries sued the *Schultz* trustees in an underlying class action, alleging that they mismanaged the investment of the plan funds. *Schultz v. Kirkland*, No. CV–00–1377–HA (D. Or. filed Oct. 10, 2000). The parties to the class action wished to settle. Requisite to doing so was payment by the *Schultz* trustees' insurance provider, Legion, on a policy covering their management of the trust plan. The *Schultz* trustees filed a complaint against Legion seeking a declaratory judgment that the effective limit of the policy held by the *Schultz* trustees with respect to the potential losses incurred in the underlying *Schultz* class action was $5,000,000. The trustees also sought a declaratory judgment that Legion was obligated to pay their attorneys' fees.

After the complaint and answer were filed, the *Schultz* trustees and Legion agreed to settle the insurance coverage dispute. The proposed settlement provided that the *Schultz* trustees would dismiss the coverage dispute action, conditioned on the dismissal of the underlying *Schultz* class action, in exchange for Legion's payment of $478,000 to satisfy its obligations on the policy and payment of $100,000 for attorneys' fees. Legion agreed to pay the $578,000 by April 1, 2002.

The settlement agreement was neither presented to the district court nor ever approved by the district court, and no order was entered dismissing the coverage action. However, on March 29, 2002, the *Schultz* trustees filed a motion in this action asking the district court to enforce the settlement agreement between the *Schultz* trustees and Legion because Legion could not confirm that it would pay the agreed amount by April 1, 2002.

On the day the *Schultz* trustees' motion to enforce the settlement agreement was filed, the district court held a hearing. Although not parties to either the motion or to the action out of which it arose, trustees being sued in two different but similar class actions appeared: *Eidem v. Plumbers Local 290*, No. CV–00–1446–HA (D. Or. filed Oct. 26, 2000), and *McPherson v. Eighth District Electrical*, No. CV–00–1445–HA (D. Or. filed Oct. 26, 2000). They informed the district judge that Legion was also their insurer and that they also had reached settlement agreements with Legion regarding the amounts Legion would pay on the policies held by the *Eidem* and *McPherson* trustees as well as attorneys' fees.

For its part, Legion notified the court that on March 28, 2002, the Commonwealth Court of Pennsylvania granted a petition to rehabilitate Legion and appointed the State's Insurance Commissioner as Rehabilitator, effective April 1, 2002. Rehabilitation is a process by which the state takes over a financially insolvent insurer so it can maintain its coverage to policyholders and avoid liquidation.

Following the hearing, the district court issued an order finding that Legion had "fail[ed] to provide adequate assurances of payment" in its settlement with the *Schultz* trustees. The court made the same finding with respect to the settlement agreement between Legion and the *McPherson* trustees, although payment was not required under the agreement until April 11, 2002. It also found Legion in breach of its settlement agreement with the *Eidem* trustees, which called for payment on March 21, 2002. The settlement agreements between Legion and the *Eidem* trustees and the *McPherson* trustees had never been presented to the court in

either this action or the underlying class actions. The court ordered Legion to pay $9.5 million immediately, the total amount owed under all three settlement agreements.

When payment was not made, the *Schultz* trustees brought a motion asking the court to hold Legion in contempt. In response, the Rehabilitator requested that the court grant full faith and credit to the order of rehabilitation entered by the Pennsylvania court, which prevented the Rehabilitator from making any payments. On May 24, 2002, the district court found Legion in contempt of the March 29 order. The court stated that Legion and its Rehabilitator could purge themselves of the contempt "by paying the full amount ordered into the registry of the court by June 10th [2002]." The district court further ordered that "if the [R]ehabilitator has not paid the full amount into the court by that date, a sanction—I sanction—excuse me, I impose sanctions of $5,000 per day effective the 1st of June." The $5,000 per day in sanctions were to continue "until the full amount ordered has been paid." [*Id.*]

## II.

We begin by determining the grounds for our appellate jurisdiction. At oral argument, neither party was able to identify a basis for appellate jurisdiction. Thus we must satisfy ourselves that these appeals are properly before us. *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 665 (9th Cir. 2003).

### A.

■ The March 29 order directing Legion to pay the settlement amounts into the court's registry would not ordinarily provide a basis for a direct appeal. 28 U.S.C. § 1291 gives this court jurisdiction over "all final decisions of the district courts," but the district court never entered a final judgment following the order.

Moreover, a final judgment requires a "separate document," Fed. R. Civ. P. 58(a)(1), which was not filed in this action.

■ However, we do have appellate jurisdiction. First, although no formal final judgment was rendered, the order has the characteristics of a final judgment. A final judgment is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945). The purpose of the finality requirement is to avoid piecemeal appeals. *Richardson–Merrell, Inc. v. Koller*, 472 U.S. 424, 430, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985); *Pride Shipping Corp. v. Tafu Lumber Co.*, 898 F.2d 1404, 1406 (9th Cir.1990). The district court's March 29 order essentially ended the litigation in *Kirkland v. Legion Insurance Co.* on the merits. The agreement settled the declaratory judgment claim on the limits of the policy as well as the trustees' claim for attorneys' fees. Although the district court never formally approved the settlement agreement, the March 29 order directing Legion to pay the amount agreed upon to resolve the anticipatory repudiation claim effectively indicated its approval of the settlement.

Furthermore, despite being contingent on the settlement of the underlying *Schultz* class action, once the trustees moved to enforce the settlement agreement, they waived that condition. By also failing to raise the issue, Legion likewise waived it. Consequently, the March 29 order left nothing for the district court to do, except formally enter a final judgment. There was no other conceivable district court order with respect to the case's merits once the court in effect approved the settlement agreement by enforcing its terms. Even if the district court was wrong on the merits, the order should still

be treated as final for purposes of the final judgment rule.

 Although a final judgment requires a "separate document," FED. R. CIV. P. 58, neither the Supreme Court nor this court views satisfaction of Rule 58 as a prerequisite to appeal. *Shalala v. Schaefer,* 509 U.S. 292, 303, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993) ("The Secretary . . . argues that a formal 'separate document' of judgment is not needed for an order of a district court to become appealable. That is quite true. . . ."); *Mitchell v. Idaho,* 814 F.2d 1404, 1405 (9th Cir.1987) ("[W]e would not be deprived of jurisdiction simply because the . . . [ ] order did not comply with the separate judgment rule."). Therefore, we hold that the March 29 order has sufficient finality for us to have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

### B.

 The appealability of the May 24 order holding Legion in contempt turns on whether we characterize it as civil or criminal contempt. "Orders of civil contempt entered against a party during the course of a pending civil action are not appealable until final judgment," *SEC v. Elmas Trading Corp.,* 824 F.2d 732, 732 (9th Cir.1987), while criminal contempt orders, on the other hand, are immediately appealable. *Union of Prof'l Airmen v. Alaska Aeronautical Indus., Inc.,* 625 F.2d 881, 883 (9th Cir.1980). Whether contempt is civil or criminal depends on the purpose and character of the sanction imposed. *Portland Feminist Women's Health Ctr. v. Advocates for Life, Inc.,* 877 F.2d 787, 790 (9th Cir.1989). "If its purpose is to punish a past violation of a court order the contempt is criminal. If its purpose is remedial, i.e. to compensate for the costs of the contemptuous conduct or to coerce future compliance with the court's order, the contempt order is civil." *Id.*

The May 24 contempt order is civil. Its purpose was remedial: it was designed to force Legion and its Rehabilitator to comply with the March 29 order. However, because we conclude that the March 29 order is of sufficient finality to be appealable, the May 24 civil contempt order is in turn appealable. *Dollar Rent a Car v. Travelers Indem. Co.,* 774 F.2d 1371, 1376 (9th Cir.1985) ("[A]n appeal of a civil contempt order is permissible when it is incident to an appeal from a final order or judgment. . . ."). We therefore now turn to the merits.

### III.

We review for an abuse of discretion the district court's decision to enforce the settlement agreement. *Doi v. Halekulani Corp.,* 276 F.3d 1131, 1136 (9th Cir.2002). We review de novo whether the district court had jurisdiction to enforce the settlement agreement. *Arata v. Nu Skin Int'l Inc.,* 96 F.3d 1265, 1268 (9th Cir.1996).

### A.

 The district court's order enforcing the settlement agreement was based on "Legion's failure to provide adequate assurances of payment in the *Schultz* Action." Oregon law governs the construction and enforcement of the settlement agreements between the trustees and Legion. *Jeff D. v. Andrus,* 899 F.2d 753, 759 (9th Cir.1989). Under Oregon law, "before a party to an executory contract may be said to have anticipatorily breached the same he must refuse by acts or deeds [to] perform his obligations under the contract positively, unconditionally, unequivocally, distinctly and absolutely." *Swick v. Mueller,* 193 Or. 668, 238 P.2d 717, 720 (1951); *see Jitner v. Gersch Dev. Co.,* 101 Or.App. 220, 789 P.2d 704, 706 (1990).

The district court made no finding that Legion had "by acts or deeds" refused to

perform its end of the settlement agreement "positively, unconditionally, unequivocally, distinctly [or] absolutely." The only evidence of anticipatory repudiation was (1) an email from one of Legion's lawyers, Martin Ween, stating, "At this time, I cannot confirm the position of Legion on the payment of the [settlement amounts]. If you require clarification, I suggest that you contact … Legion directly."; and (2) the declaration of counsel for the *Schultz* trustees stating that he "spoke with Joe Boyle, President of Legion. Mr. Boyle likewise informed me that he could not and would not provide any additional information concerning the status of Legion's payments required by the terms of the several settlement agreements." These statements refusing to "confirm" Legion's payment or "give additional information" do not amount to a refusal to perform "positively, unconditionally, unequivocally, distinctly[or] absolutely."

The *Schultz* trustees argue that the district court's decision was based on section 251 of the Restatement of Contracts (Second), which provides that failure to give adequate assurances is an effective repudiation of the contract. Section 251 does indeed so provide. However, the *Schultz* trustees have not cited, and we have not found, any Oregon court that has cited, or relied on, this section of the Restatement. While failure to give adequate assurances is a repudiation in commercial sales contracts, OR. REV. STAT. § 72.6090, this case does not involve a commercial sales contract. Instead, the law of anticipatory repudiation in executory contracts is controlled by *Swick*. *Swick* must govern our decision, not the Restatement.

■ Kirkland incorrectly argues that Legion's rehabilitation was an anticipatory repudiation. First, the rehabilitation order expressly stated that it was not to be construed as a repudiation of Legion's obli-

gations. Second, a rehabilitation order is not considered a repudiation under Oregon law. OR. REV. STAT. § 734.063(5).

Therefore, the district court should not have held that Legion must pay the $578,000 (that needed to settle the *Schultz* action) based upon an anticipatory repudiation occurring before April 1, the money's actual due date. This was an error of law that resulted in an abuse of discretion in entering the order. *Koon v. United States,* 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (holding that district court by definition abuses its discretion when it commits an error of law). This requires reversal of the March 29 order.

Legion additionally argues that the district court's order was an abuse of discretion because the Pennsylvania rehabilitation order preventing the Rehabilitator from making payments should have been accorded full faith and credit in Oregon. Because we have already held the order was an abuse of discretion, we need not reach this issue. For the same reason, we do not reach Legion's contention that, under Oregon law, Pennsylvania is a "reciprocal state" and therefore should have been protected from required payment.

### B.

■ We turn now to the district court's enforcement of the settlement agreements between the *Eidem* and *McPherson* trustees and Legion. At the March 29 hearing, the *Eidem* and *McPherson* trustees interrupted the proceedings and informed the court that they too had settlement agreements with Legion and that they too wanted the court to order Legion to pay them. The parties dispute whether the district court had jurisdiction over these settlement agreements.

■ The district court has jurisdiction over "cases and controversies." U.S. CONST. ART. III, § 2. In order for there to be a "case or controversy," "[a] civil action [must be] commenced by filing a complaint with the court." FED. R. CIV. P. 3. Failure to file a complaint is not necessarily fatal to the action. *Schlesinger v. Councilman*, 420 U.S. 738, 742 n. 5, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975). However, a would-be party must file some papers adequate to "apprize [the defendant] of the nature of the claim and the relief sought and to invoke the jurisdiction of the court." *Id.* Rules 4 and 5 explicitly require that the defendant be summoned and served with the relevant papers. FED. R. CIV. P. 4, 5.

Neither the *Eidem* trustees nor the *McPherson* trustees ever brought an action that would have given the district court subject matter jurisdiction over the settlement agreements and their alleged breach by Legion. Unlike the *Schultz* trustees, the *Eidem* and *McPherson* trustees did not sue Legion for a declaration as to insurance coverage. The settlement agreements were not presented to the court for approval. There was no compliance or substantial compliance with FED. R. CIV. P. 3, 4, or 5. The district court simply did not have jurisdiction over any claim of the *Eidem* and *McPherson* trustees against Legion.

The *Schultz* trustees quote in part FED. R. CIV. P. 21, and argue that the district court's assumption of jurisdiction over these other settlement disputes was proper because "the court was free to join additional parties on its own initiative at any stage of the action and on such terms as are just." However, Rule 21 is directed at "defect of parties." FED. R. CIV. P. 21 advisory committee notes. It is viewed as a grant of "discretionary power [to the federal court] to perfect its diversity jurisdiction by dropping a nondiverse party provided the nondiverse party is not indis-

pensable to the action under Rule 19." *Sams v. Beech Aircraft Corp.*, 625 F.2d 273, 277 (9th Cir.1980). Granting relief to the *Eidem* and *McPherson* trustees had nothing to do with perfecting diversity jurisdiction. In any event, there was no order of the court adding the *Eidem* or *McPherson* trustees to the case between Legion and the *Schultz* trustees. FED. R. CIV. P. 21 ("Parties may be dropped or added *by order of the court* .... " (emphasis added)).

The *Schultz* trustees also cite FED. R. CIV. P. 15(b), which allows a court to grant relief greater than that prayed for, but Rule 15(b) is likewise inapplicable. It allows amendments to the pleadings to conform to the evidence and states that "[w]hen *issues not raised by the pleadings* are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." FED. R. CIV. P. 15(b) (emphasis added). Here, whether Legion breached its settlement agreement with the *Eidem* or *McPherson* trustees is not an "issue not raised by the pleading" because the *Schultz* trustees have no standing to plead or raise the breach of those agreements.

Therefore, the district court had no jurisdiction to order Legion to make payments relating to its breach of settlement agreements with the *Eidem* and *McPherson* trustees.

## IV.

■ As we cannot uphold the order requiring Legion to pay, so too must we decline to affirm the district court's order holding Legion in contempt for failure to comply with that order. The validity of a contempt adjudication is based on the legitimacy of the underlying order. *Davies v. Grossmont Union High Sch. Dist.*, 930 F.2d 1390, 1394 (9th Cir.1991). Because

entering the order to pay was an abuse of discretion, the corresponding contempt order cannot stand.

### V.

The district court's order requiring Legion to pay all of the money due under its settlement agreements with the *Schultz, Eidem,* and *McPherson* trustees is REVERSED. Likewise, the judgment of the district court holding Legion in contempt is REVERSED. We remand to the district court to VACATE the order of contempt against Legion.