Argued December 3, 1942; reversed February 9; rehearing denied
March 30, 1943

## PEELER v. TAROLA MOTOR CAR CO.

(134 P. (2d) 105)

Before Kelly, Chief Justice, and Bailey, Rossman
and Brand, Associate Justices.

Will H. Masters, of Portland, for appellant.

Irving Rand, of Portland (George W. Mead, of Portland, on the brief), for respondent.

BAILEY, C. J. This action was brought by the plaintiff to recover damages for alleged breach of contract by the defendant. From a judgment in favor of the plaintiff the defendant has appealed.

On January 3, 1938, R. R. Peeler, doing business under the assumed name and style of Peeler's Garage, entered into a contract with the defendant, Tarola Motor Car Company, an Oregon corporation. By the terms of the agreement the defendant granted to the plaintiff the exclusive right to purchase from the defendant Chrysler motor vehicles for resale in Klickitat county, Washington, and the non-exclusive right to purchase from the defendant Chrysler motor vehicle parts and accessories, Plymouth motor vehicles and Plymouth parts and accessories for resale in the same area. The contract contained the limitation, however, that the plaintiff was not given the right to purchase Plymouth motor vehicles ''for resale in cities and/or towns other than that in which is located his place of business, in which an authorized dealer selling Plymouth motor vehicles is located.''

During the year 1938 the plaintiff purchased, under his contract with the defendant, four Plymouth cars and no Chryslers. In 1939 he purchased eight Plymouth motor vehicles and one Chrysler. And in 1940, prior to September 17, he purchased from the defendant two Chrysler cars and no Plymouths.

On the date last mentioned, William E. Fox, wholesale manager of the defendant corporation, called on Mr. Peeler at the latter's place of business at White Salmon, Washington, and informed him that he was "all through". Peeler, according to his testimony, asked Fox "on what ground he was kicking me out", and Fox answered, "No representation." Fox tendered a "mutual release agreement" for Peeler to sign. The latter refused to sign it, and pleaded with Fox for "a chance to show them I could sell cars".

On September 23, 1940, Peeler went to Portland to see Mr. Tarola, president of the defendant corporation, concerning the contract. He did not see Tarola, however, but talked with Fox. They arrived at no understanding satisfactory to Peeler and the latter went home. He returned to Portland the next day and interviewed Mr. Tarola, who told him that the entire matter was in the hands of Mr. Fox. Thereupon Peeler again talked with Fox and begged to be allowed to "continue with the agency". He was told by Fox that the defendant would deliver no more cars to him, for the reason that another dealer had been appointed for the territory.

Mr. Peeler thought over the matter for a few days and then consulted his attorney in Portland. On October 4, 1940, the attorney wrote a letter to the defendant in which he stated that Mr. Peeler had consulted him and reported that he had been informed by the

defendant company that he was no longer its representative and that a new dealer had been appointed for Peeler's territory. In the letter the attorney further stated:

> "I have carefully examined the form of Mr. Peeler's contract and I see no provision therein for a termination of the same without notice. Mr. Peeler has been a Chrysler dealer in White Salmon, Washington, for many years and has been to date continuously active in the sale of Chrysler automobiles in that territory.
>
> "Kindly consider this communication a formal demand upon you for delivery to my client of the automobiles ordered and sold by him and also notice to the effect that my client considers himself an active Chrysler dealer and that he will hold you responsible for any damage which he may sustain by a violation of his contract."

On October 11, Mr. Fox called on Peeler at his place of business and, according to Peeler's testimony, said, "Well, you can tell your friend George [Peeler's attorney] we will give you what cars you want." Thereafter the plaintiff made the following purchases of cars from the defendant: one Plymouth car on October 14, 1940; one Plymouth on October 19; and one Chrysler on November 1.

The defendant, under date of October 15, 1940, wrote to the plaintiff, notifying him "that the Tarola Motor Car Company as distributor hereby cancels that certain dealer's agreement, dated January 3, 1938, between you as dealer and Tarola Motor Car Company as distributor, under and by virtue of section 9 of said agreement", and that, "This cancelation will take effect in 90 days from the receipt of this notice." The plaintiff received the letter on October 17.

On October 28 the defendant, in answer to a request of the plaintiff's attorney for "an explanation concerning the appointment of another dealer in Mr. Peeler's territory", wrote to the attorney as follows:

"In reply to your letter of October 18th, relative to Peeler's Garage, White Salmon, Washington, may we advise that the above named dealer is the exclusive Chrysler dealer in the White Salmon territory and shall remain so until the expiration of his contract."

Neither the attorney nor Peeler answered that letter. Nothing occurred between the plaintiff and the defendant from October 11, 1940, when Fox told the plaintiff that he could have all the cars he wanted, until the final termination of the contract as provided by the terms thereof, to indicate that the parties to the contract did not consider it as in full force and effect, with the possible exception of the inquiry by Peeler's attorney, hereinbefore referred to, regarding the appointment of another dealer in Peeler's territory.

The plaintiff introduced in evidence what is termed a "confidential bulletin", issued by the defendant under date of October 8, 1940, and addressed to "All Chrysler-Plymouth Dealers". The bulletin listed all types of Chrysler and Plymouth automobiles, with the factory price of each type, the "Portland drive-out cost" and the dealer's margin, also the cost and dealer's margin of accessories for Plymouth cars. The plaintiff then testified as follows concerning the bulletin:

"Q. Is that the official bulletin issued to dealers and to yourself by the Tarola Motor Car Company?

"A. Yes, confidential bulletins on the prices and our margins.

"Q. And what date does that bulletin bear?

"A. October eight.

"Q. Was that issued to you in the regular course of business as a Plymouth-Chrysler dealer, by the Tarola Motor Car Company?

"A. Yes. Not at that date, however; some time later. That is when the bulletin was put out."

When Mr. Fox was at White Salmon on September 17, 1940, he arranged with F. G. Martin of that place to represent the defendant as its dealer for the sale of Chrysler and Plymouth cars. The written contract between Martin and the defendant was dated January 27, 1941, on which date it was approved by the Chrysler corporation. Prior to the effective date of that contract Martin did not sell any automobiles in that territory. Until that date, according to his uncontradicted testimony, Martin referred all inquiries concerning Chrysler and Plymouth cars to the plaintiff.

The complaint, after setting forth the execution of the contract between the plaintiff and the defendant, alleges that the defendant on September 17, 1940, notified the plaintiff "that he no longer was a Chrysler dealer and that he thereafter could not secure" Chrysler products for resale; that soon after that date the defendant designated a new Chrysler dealer for "said territory"; and that the appointee "held himself out as a Chrysler dealer". It is then alleged, "That the termination of the contract between plaintiff and defendant by defendant was arbitrary and malicious and caused plaintiff's credit to be damaged and destroyed and plaintiff was damaged thereby by loss of business in the sum of $3,500.00."

The defendant in its affirmative answer alleges that by the terms of the contract it was provided that such contract "should terminate immediately by its own force, without notice from either party, in the

event of the discontinuance of dealer's representation in his sales area above described of the Chrysler products"; that at various times the defendant had notified the plaintiff that the plaintiff's facilities "for serving the public in the sale of Chrysler products were not adequate, and that he was not energetically carrying on the business of the sale of Chrysler products in said territory, and had practically discontinued the sale of said products, and that said contract was no longer of any force and effect". The answer, in paragraph V thereof, also alleges, "That said plaintiff protested the discontinuance of said contract above set forth, and plaintiff and defendant agreed to continue said contract and defendant proceeded to sell to the plaintiff automobiles and Chrysler products for resale in the said territory under and by virtue of the terms of said contract." The defendant further alleges that it did, pursuant to section 9 of the contract, on or about October 15, 1940, notify the plaintiff that his contract would be terminated within ninety days from his re- ceipt of such notice.

The plaintiff's reply to that answer is in part as follows:

"Replying to paragraph V of defendant's further and separate answer and defense plaintiff admits that he protested the discontinuance of said contract between plaintiff and defendant mentioned therein and also admits that after said breach of said contract by the defendant, the defendant agreed to continue said contract and plaintiff further admits that said contract between plaintiff and defendant provides in section 9 thereof that the same might be terminated as therein set forth and that defendant subsequently delivered to plaintiff notice of its intention to terminate said contract according to the provisions of section 9 thereof".

The reply denies all the remainder of paragraph V of the answer except as to certain particulars not here material.

At the conclusion of the taking of testimony, the defendant moved for a directed verdict in the defendant's favor, as follows:

> "If the court please, I want to make a motion for a directed verdict on behalf of the defendant on the grounds, first, that the undisputed evidence shows that plaintiff acquiesced in the reinstatement of the contract between plaintiff and defendant and this contract gives defendant the right to cancel the same upon giving ninety days' written notice, which was given; second, that there is no evidence in this case from which the jury could determine that plaintiff lost any business, it being speculative as to what automobiles he could have sold; third, that there is no pleading or evidence of facts in this case from which the jury can determine what profits plaintiff would have made if he had lost the sale of automobiles. From the state of the evidence the jury would have to speculate as to any profit the plaintiff might have lost."

The motion was denied by the trial court, and that ruling is the basis of the principal assignment of error.

It is not questioned that the defendant on September 17, 1940, and for some twenty-five days thereafter, was attempting to renounce the contract between itself and the plaintiff, and that the reason for its action was its belief that the plaintiff was not adequately representing it in his territory. The plaintiff, according to his own admissions and pleadings, protested against any cancellation of the contract by the defendant and insisted that the agreement was in full force and effect and that he was the exclusive dealer for Chrysler automobiles in his designated territory. Because of his

remonstrances he was told by the defendant, on October 11, 1940, that all his orders for cars would be filled during the term of the contract.

Thereafter the plaintiff purchased from the defendant and sold in his territory one Chrysler and two Plymouth cars, on the dates hereinabove specified. The Chrysler automobile, a 1941 model, was not available for delivery, according to the plaintiff's testimony, until November 1, 1940. The 1941 Plymouth models were not shown until September 24, 1940, and the date when they were available for delivery by the defendant is not disclosed by the record, although it does appear that those models could not be had until some time after the date last mentioned. There is no evidence before us that the defendant failed to deliver to the plaintiff between September 17, 1940, and January 17, 1941, on which latter date the contract terminated, any available automobiles ordered by him.

■ The first ground stated by the defendant in its request for a directed verdict is that "the undisputed evidence shows that plaintiff acquiesced in the reinstatement of the contract". Whether the continuance of the contract be considered as a "reinstatement" or as a reaffirmance, there is no dispute, it is true, that the plaintiff not only acquiesced in, but insisted upon, the continuance of the contract, and at no time did he accept the attempted renunciation thereof by the defendant.

In 17 C. J. S., Contracts, § 472, subsection 3, at page 978, we find this statement of a well-recognized principle:

"The renunciation of a contract by the promisor before the time stipulated for performance is not effective unless such repudiation is unequivocally

accepted by the promisee. If the promisee declines to accept the renunciation and continues to insist on the performance of the promise, as he may do, the contract remains in existence for the benefit and at the risk of both parties, and, if anything occurs to discharge it from other causes, the promisor may take advantage of such discharge.''

The court in *Dingley v. Oler*, 117 U. S. 490, at 503, 29 L. E. 984, 6 S. Ct. 850, a case which involved the alleged repudiation of a contract by one of the parties thereto, observed:

''In *Smoot's Case*, 15 Wall. 36, this court quoted with approval the qualifications stated by Benjamin on Sales, 1st ed. 424, 2nd ed. § 568, that 'a mere assertion that the party will be unable, or will refuse to perform his contract, is not sufficient; it must be a distinct and unequivocal absolute refusal to perform the promise, and must be treated and acted upon as such by the party to whom the promise was made; for, if he afterwards continue to urge or demand a compliance with the contract, it is plain that he does not understand it to be at an end.' ''

In *Roehm v. Horst*, 178 U. S. 1, 13, 44 L. E. 953, 20 S. Ct. 780, the court quoted with approval from *Johnstone v. Milling*, 16 Q. B. Div. 460, 467, as follows:

''. . . 'When one party assumes to renounce the contract, that is, by anticipation refuses to perform it, he thereby, so far as he is concerned, declares his intention then and there to rescind the contract. Such a renunciation does not of course amount to a rescission of the contract, because one party to a contract can not by himself rescind it, but by wrongfully making such a renunciation of the contract he entitles the other party, if he pleases, to agree to the contract being put an end to, subject to the retention by him of his right to bring an action in respect of such wrongful rescission.' ''

■ The legal principle announced in the excerpt hereinabove quoted from 17 C. J. S. was approved by this court in *Dose v. Lilly Co.,* 132 Or. 533, 539, 286 P. 560, and has been adopted by the courts of many other jurisdictions, as evidenced by the cases cited in the footnotes of that text and by 13 C. J. 655, note 78. The rule is thus worded in 1 Restatement of the Law of Contracts, § 319, page 481: "The effect of repudiation is nullified (a) where statements constituting such a repudiation are withdrawn by information to that effect given by the repudiator to the injured party before he has brought an action on the breach or has otherwise materially changed his position in reliance on them".

■■ The plaintiff asserts that under the terms of paragraph 10 of the contract it is provided that the acceptance of orders from the dealer or "the continuance of the sale of products herein referred to in dealer's sales area . . . shall not be construed as a renewal of the agreement nor as a waiver of the termination", and that his continuing to purchase automobiles from the defendant after September 17, 1940, was therefore in accordance with that provision of paragraph 10 and was not inconsistent with his theory that the contract had been rescinded.

Before discussing paragraph 10 in detail, attention is directed to paragraphs 8 and 9, which precede it in the contract. By paragraph 8 it is provided that the "agreement shall terminate immediately by its own force without notice from either party in the event of" an assignment or attempted assignment by, or the insolvency of, the dealer, or "the assumption of any other line of motor vehicles for sale by the dealer; or the discontinuance of" representation in his sales area by the dealer.

Under paragraph 9 it is provided that the agreement may be terminated at any time upon not less than ninety or more than ninety-five days' written notice by the distributor, or upon not less than fifteen or more than twenty days' written notice by the dealer. It was according to this provision that the defendant, under date of October 15, 1940, gave the plaintiff written notice that his contract would be terminated in ninety days after his receipt of the letter containing that notification.

Paragraph 10 of the agreement is as follows:

"In the event the agreement is terminated, the acceptance of orders from dealer by distributor or the continuance of the sale of products herein referred to in dealer's sales area or the referring of inquiries to dealer by distributor or any other act of distributor shall not be construed as a renewal of the agreement nor as a waiver of the termination, but nevertheless all such transactions shall be governed by terms identical with the terms of the agreement."

The termination of the agreement described in paragraph 10 of the contract has reference only to such termination as specified in paragraphs 8 and 9. As so used, "termination" has no reference to a failure by one of the parties to perform the contract or to a repudiation by one of the parties. The agreement was terminated ninety days from the date, to wit: October 17, 1940, on which the plaintiff received the defendant's written notice of termination, pursuant to paragraph 9. It was not previously terminated.

The plaintiff seeks to recover damages from the defendant on the theory that the defendant arbitrarily terminated its contract with him. His complaint is that because of such termination his credit was in-

jured and he was "damaged thereby by loss of business". Inasmuch as the contract came to an end by procedure according to its terms, no loss of credit or business by the plaintiff because of the termination of the contract can be the subject of a claim for damages by him against the defendant.

It is our opinion that the defendant's motion for a directed verdict should have been allowed for the first reason therein stated. The judgment appealed from is therefore reversed and the cause is remanded with direction to the circuit court to enter judgment for the defendant.