Argued March 6, affirmed April 4, 1972

McMILLAN ET UX, *Respondents, v.*
GOLDEN ET UX, *Appellants.*
495 P2d 720

*Mel Kosta,* Klamath Falls, argued the cause for appellants. With him on the brief were Kosta and Brant, P.C., Klamath Falls.

*Stanley C. Jones,* Klamath Falls, argued the cause for respondents. With him on the brief was J. Anthony Giacomini, Klamath Falls.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN, TONGUE and BRYSON, Justices.

TONGUE, J.

This is a suit for specific performance of a contract for the sale of a ranch. It was brought by the sellers against the purchasers for failure to make two annual payments of $8,000 each when due by the terms of the contract.

The principal defense is that by the terms of the same contract it was provided that the sellers would lease back the ranch for one year for the sum of $8,000, payable in two equal installments, before the first annual payment of $8,000 was due under the contract, and that the sellers never made those rental payments, despite the fact that they had the possession of the ranch for most of that year. It appears, however, that the purchasers then went into possession

of the ranch before the end of the first year and that since then they have retained possession and have also refused to pay either the first or second annual payments of $8,000.

The trial court entered a decree for specific performance of the contract under which the entire balance of the purchase price of the contract, in the sum of $100,000, was held to be due and payable by reason of a contract provision accelerating payment of the entire contract balance on default of any annual payment. The decree also allowed certain offsets, including an offset in an amount equal to most of the unpaid rental payments. Defendants have appealed from the decree for specific performance.

The principal contentions by the defendants are: (1) that the contract payment provisions and the contract provisions for a lease-back for one year were dependent covenants; (2) that defendants made a proper tender of the first annual payment of $8,000, conditioned upon payment of plaintiffs of a rental payment of $8,000; (3) that the "time essence" clause of the contract applies equally to both parties; (4) that plaintiffs do not come into equity with "clean hands," and (5) that specific performance was not a proper remedy. Because of these contentions it becomes necessary to consider the facts.

On November 27, 1968, the parties entered into a contract for the sale of a ranch in Klamath county for $105,250, of which $5,250 was paid as a down payment, together with $15,210 in prepaid interest. The balance of $100,000 was payable in annual payments of $8,000 each, plus interest, beginning December 15, 1969.

The contract also provided "* * * that Buyers shall lease back to Sellers, the premises for the year

1969 for a total sum of $8000 * * *" under terms "* * * set forth Exhibit 'A' of the Earnest Money Receipt, * * *" and that "* * * a formal lease agreement shall be executed within 15 days of the date of this contract." Exhibit A provided that $4,000 of the total sum of $8,000 should be paid on or before March 1, 1969, and the balance of $4,000 on or before December 1, 1969. That document did not, however, contain other usual terms and conditions for the lease of a ranch, but listed the items of work which the sellers agreed to perform for improvement of the property as a part of the contract of sale, including the clearing of one tract, the construction of a ditch and fence, and the seeding of another tract as a "permanent pasture."

The lease was never executed as agreed upon because the parties were never able to agree upon the terms for such a lease. Without going into unnecessary details, it appears from the record that both parties were in part responsible for this. Meanwhile, plaintiffs (the sellers and prospective lessees) remained on the ranch, primarily for performance of the clearing work and other work required by the contract. As a part of that work they cut and sold the timber on the tract to be cleared and retained the proceeds to defray part of the cost of the clearing operation. They also arranged with one Collman to seed the pasture and also permitted him to cut some wheat on that tract as part payment for helping with the clearing and seeding operations. Defendants contended that the work to be performed by plaintiffs was not done properly. However, defendants' counterclaims in support of those contentions are not before the court on this appeal.

By July 1969 negotiations over the terms of a

lease had reached an impasse. Plaintiffs' attorney then, on July 8, 1969, sent to defendants a check in payment for plaintiffs' partial use of the premises to that date, as computed by him. Plaintiffs did not, however, make either of the $4,000 payments as due on March 1 and December 1, 1969. Meanwhile plaintiffs moved out of the ranch house, but did not remove all of their personal belongings until August 1969. The plaintiffs and Collman also returned in September or October 1969 to cut the wheat, to reseed part of the pasture and to do more clearing, including the piling of slash. They also cut a crop of hay from the pasture, but stacked it and left it for defendants. In addition, plaintiffs applied for the federal "wheat allotment" for the ranch for the year 1969.

Defendants then took possession of the ranch and in October 1969 leased it to another tenant. On December 16, 1969, defendants' attorney wrote to plaintiffs' attorney to "confirm" his "tender" of the $8,000 annual payment due December 15, 1969, and stated that he was ready to pay that amount "* * * upon receipt from your clients $8,000 rent provided for in the lease-back provision of [the] contract, and compliance or compensation for noncompliance of the other obligations of your clients set out in the said contract," in apparent reference to defendants' contention that plaintiffs had not properly seeded and cared for the "permanent pasture," among other things. That alleged tender was rejected by plaintiffs.

As previously stated, defendants then retained possession of the ranch and also failed to make the annual payment due December 15, 1970, or to make any tender of that payment, either conditional or otherwise.

The trial court made a finding of fact in this case that "the terms of the sale and of the lease were independent provisions" and that although "the provisions of the lease agreement were never reduced to writing," the plaintiffs "performed the provisions of said lease by them to be performed except the payment of rentals as required."

The problem of determining whether, in a given case, the provisions of a land sale contract are dependent or independent covenants is not without difficulty. See 6 Williston on Contracts 28 et seq and § 816 et seq (3d ed), and 3A Corbin on Contracts 277 et seq, § 694 et seq (1960 ed).

Two decisions by this court are cited by defendants in support of their contention that the terms of the sale and the terms of the lease were dependent covenants. *Cameron v. Edgemont Investment Co.,* 149 Or 396, 41 P2d 249 (1935), and *Henderson v. Morey,* 241 Or 164, 405 P2d 359 (1965). In *Cameron* (at p 404) we stated the following test for use in determining whether the provisions of a contract for the sale of land are dependent or independent:

" 'There is no arbitrary test by which the question can be determined. The old decisions turned upon a technical construction of the language used, but the modern doctrine is that a contract should be construed according to the meaning and intention of the parties. It is unnecessary for us to make special reference to the several rules upon the subject or the various decisions of the courts. It is sufficient to say that, in the absence of very clear indications to the contrary, promises each of which forms the whole consideration for the other, will not be held to be independent of one another, and a failure of one party to perform on his part will excuse the other from liability to perform.' "

In *Henderson* (at p 169) we stated the following rule:

"* * * 'whether the contract is single or is divisible depends upon the intent of the parties which may be tested by deciding whether the consideration was viewed as a whole by the parties or was apportioned among the various promises.' "

See also Restatement of the Law of Contracts 386, 388 and 391, §§ 267, 268 and 269.

It is possible that the contract provision in this case for payment by defendants of the first annual payment of $8,000 on December 15, 1969, and the contract provisions for a lease-back of the ranch, with rental payments by plaintiffs of $4,000 on March 1, 1969 and $4,000 on December 1, 1969, may have been intended to be dependent covenants in that it may have been the intent of the parties that such rental payments were to provide the funds for the first annual contract payment.

In such an event, upon the failure to agree upon the terms of the lease and upon plaintiffs' failure to make such rental payments, defendants would then have been "excused from their liability to perform" and would have had sufficient grounds to rescind the contract, return the ranch to plaintiffs and demand the return by plaintiffs of all previous payments. Instead, however, defendants elected to affirm the contract, remain in possession, and to neither make nor tender the next annual payment of $8,000, as due and payable on December 15, 1970.

On the other hand, it is also possible that regardless of whether the contract provision for the first annual payment and the contract provision for

prior payment of rent in the same amount were dependent or independent covenants, the contract provisions for all subsequent annual payments, which were to extend for a period of over 11 more years, were not intended to be dependent upon the contract provision for rental payments under a lease, which was to extend only during the first year of the contract.

■ Under the facts of this case, however, it is not necessary to decide these questions because, as previously stated, the defendants, by remaining in possession of the ranch with knowledge of plaintiffs' failure to pay rent, and by thus electing to affirm the contract, could not both retain possession of the ranch and, at the same time, refuse to make further annual payments, as required by the contract. Cf. *Peeler v. Tarola Motor Co.*, 170 Or 600, 609, 134 P2d 105 (1943); *Ratcliffe v. Union Oil Co. of Calif.*, 159 Or 221, 233, 77 P2d 136 (1938); and *James v. Ward*, 96 Or 667, 676, 190 P 1105 (1920). See also 1 Restatement of the Law of Contracts 456, § 309, and 2 Restatement of the Law of Contracts 713, § 381, comment d. Even when sued by plaintiffs for specific performance of the contract, defendants did not ask to have it rescinded, but instead again elected to affirm the existence of the contract by the filing of a countersuit asking that plaintiffs be required to pay rent in the sum of $8,000, as provided by the terms of the contract, and also pay damages for failure to properly perform improvement work, as also provided by the contract.

This contract includes a provision under which payment of the entire contract balance may be "accelerated" and become due upon the failure of defendants to make any annual payment. Indeed, the contract provides, among other remedies in the event of the failure of the defendants to make any annual

payment, that the plaintiffs shall have the following rights: "* * * To declare the full unpaid balance immediately due and payable * * * To specifically enforce the terms of the agreement by suit in equity * * *." Defendants do not contend that the right to accelerate payments and the right to specific performance are alternative, rather than cumulative rights.

Under these facts and in view of these contract provisions the trial court did not err in entering a decree of specific performance in which the contract balance of $100,000 was declared to be due and payable.

Under this view of the case it becomes immaterial whether the "time essence" provision of the contract applied "equally" to both parties, as contended by defendants, and whether defendants' conditional tender of the first contract payment of $8,000 was a proper tender, as also contended by defendants, for the reason that defendants also failed to either make or tender the second contract payment, while remaining in possession of the ranch and demanding performance by plaintiffs.

■ We have also considered defendants' contention that plaintiffs are not entitled to the equitable relief of specific performance by reason of alleged "unclean hands." After reading the entire record we find that plaintiffs' conduct was not such as to bar them from such relief, particularly in view of the fact that the trial court allowed credit to defendants for the use of the ranch by plaintiffs during 1969 in the sum of $6,650. No contention is made by defendants that this offsetting credit was either improper or that the decree of specific performance was improper by reason of that offset. Cf. *McCourt v. Johns,* 33 Or 561, 53 P 601 (1898).

■ Finally, we have considered defendants' contention that it would have been a more appropriate remedy for the trial court to reinstate the contract and permit defendants to make all delinquent payments. Because of defendants' failure to make both the 1969 and the 1970 annual payments, however, and because of the contract provisions for acceleration and specific performance, we cannot say that the trial court erred in rejecting that contention. Cf. *Renard v. Allen,* 237 Or 406, 417, 391 P2d 777, 782 (1964).

The decree of the trial court is affirmed.